UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| APARNA RAO, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>QUORUM HEALTH CORPORATION, THOMAS D. MILLER, and MICHAEL J. CULOTTA,<br><br>　　　　　　　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Aparna Rao ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against Defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Quorum Health Corporation ("Quorum" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Quorum securities: (1) pursuant and/or traceable to Quorum's false and misleading Registration Statement issued in connection with the Company's spinoff from Community Health Systems, Inc. ("CHS") effective on or about April 29, 2016; and/or (2) on the open market between May 2, 2016 and August 10, 2016, both dates inclusive, seeking to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2. Quorum is an independent operator and manager of general acute-care hospitals and outpatient services in the United States, with facilities in 16 states. Quorum was spun off from CHS effective April 29, 2016. Under the terms of the spin-off, CHS stockholders who held CHS common stock as of April 22, 2016, the record date, received a distribution of one share of Quorum common stock for every four shares of CHS common stock, plus cash in lieu of any fractional shares. CHS's stockholders owned all of the outstanding common stock of Quorum upon completion of the spinoff. On May 2, 2016, Quorum's common stock began trading on the New York Stock Exchange ("NYSE") under the ticker symbol "QHC."

3. Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) a number of Quorum's hospitals were underperforming at the time of the spin-off from CHS; (ii) various other indicators of impairment existed at the time of Quorum's spin-off from CHS; (iii) Quorum disregarded and/or failed to advise investors of the foregoing issues; and (iv) as a result of the foregoing, Quorum's public statements were materially false and misleading at all relevant times.

4. On August 10, 2016, Quorum issued a press release and filed a Quarterly Report on Form 10-Q with the SEC announcing the Company's financial and operating results for the three months ended June 30, 2016 (the "Q2 2016 10-Q"). In the press release and Q2 2016 10-Q, Quorum reported a substantial net loss and an operating loss for the quarter. Defendants blamed the large operating loss on the $250.4 million in impairment charges Quorum had taken in the quarter, including $45.4 million to reduce certain long-lived asset values in property, equipment and software; $5 million in goodwill based on management's decision to divest certain hospitals; and $200 million related to the carryover allocation of goodwill at the time of the spin-off from CHS.

5. On this news, Quorum's share price fell $4.99, or 49.8%, to close at $5.03 on August 11, 2016.

6. On August 11, 2016, after the market closed, Quorum hosted a conference call to discuss the Company's quarterly results. During the call, Defendant Michael J. Culotta ("Culotta"), the Company's Chief Financial Officer ("CFO), stated, in part, that "*there were indicators of impairment*" at the time of Quorum's spin-off from CHS, and Defendant Thomas D. Miller ("Miller"), the Company's Chief Executive Officer ("CEO"), stated, in part, "[w]ith the facilities from all six divisions of CHS, it's only natural to expect *there was a lack of focus on many of these matters leading up to the spin*." (Emphases added.)

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

10. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as the alleged Defendant Quorum maintains its principal executive offices in this Judicial District.

11. In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12. Plaintiff, as set forth in the attached Certification, acquired Quorum securities at artificially inflated prices and was damaged upon the revelation of the alleged corrective disclosures.

13. Defendant Quorum is incorporated in Delaware, and the Company's principal executive offices are located at 1573 Mallory Lane, Brentwood, Tennessee 37027. Quorum's common stock trades on the NYSE under the ticker symbol "QHC."

14. Defendant Miller has served at all relevant times as a member of the Quorum Board of Directors and as the Company's CEO.

15. Defendant Culotta has served at all relevant times as Quorum's CFO and Executive Vice President.

16. The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17. Quorum is an independent operator and manager of general acute-care hospitals and outpatient services in the United States, with facilities in 16 states. Quorum was spun off from CHS, effective April 29, 2016. Under the terms of the spin-off, CHS stockholders who held CHS common stock as of April 22, 2016, the record date, received a distribution of one share of Quorum common stock for every four shares of CHS common stock, plus cash in lieu of any fractional shares. CHS's stockholders owned all of the outstanding common stock of Quorum upon completion of the spinoff. On May 2, 2016, Quorum's common stock began trading on the NYSE under the ticker symbol "QHC."

### Materially False and Misleading Statements Issued By Defendants

18. On April 1, 2016, Quorum filed a Registration Statement on Form 10 with the SEC in connection with the spinoff stating that the Company's assets included $876 million in property plant and equipment and $541.7 million in goodwill. Quorum attributed $508.4 million of that value to its hospital operations reporting unit.

19. On May 2, 2016, Quorum filed a Current Report on Form 8-K with the SEC, appended to which as an exhibit was a press release entitled "Community Health Systems Completes Spin-off of Quorum Health Corporation." The press release stated, in part:

> Commenting on the launch of QHC, Thomas D. Miller, president and chief executive officer of Quorum Health Corporation, said, "QHC launches with a clear vision to focus on improving the health care in every community where services are provided. At a time when rural hospitals are under siege, we will use our resources to help make these hospitals essential in their communities. We look forward with determination and enthusiasm to the opportunity ahead."
>
> As a result of the spin-off, QHC owns or leases a portfolio of 38 hospitals with an aggregate of 3,582 licensed beds. The hospitals are geographically diversified across 16 states, primarily located in cities or counties having populations of 50,000 or less. QHC also operates Quorum Health Resources, LLC, a leading hospital management advisory and consulting services business.

20. On May 11, 2016, Quorum issued a press release and filed a Current Report on Form 8-K with the SEC announcing certain of the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 8-K"). For the quarter, Quorum reported a net loss of $5.00 million on revenue of $549.55 million, compared to net income of $6.20 million on revenue of $547.62 million for the same period in the prior year. Quorum also reaffirmed the Company's prior fiscal year 2016 financial guidance.

21. In the Q1 2016 8-K, Defendant Miller stated, in part:

> We are pleased that our financial results for the first quarter were consistent with our expectations for the full year, and today we are affirming our established financial guidance for 2016. We are very confident and optimistic about the long-term future of this new company.

22. On May 11, 2016, Quorum also filed a Quarterly Report on Form 10-Q with the SEC, reporting in full the Company's financial and operating results for the quarter ended March 31, 2016. Quorum repeated its claim that its total assets exceeded $2.3 billion, including $541.8 million in goodwill. In its Q1 2016 10-Q, Quorum stated, in part:

6

Goodwill is evaluated for impairment at the same time every year and when an event occurs or circumstances change that, more likely than not, reduce the fair value of the reporting unit below its carrying value. There is a two-step method for determining goodwill impairment. Step one is to compare the fair value of the reporting unit with the unit's carrying amount, including goodwill. If this test indicates the fair value is less than the carrying value, then step two is required to compare the implied fair value of the reporting unit's goodwill with the carrying value of the reporting unit's goodwill. The Company performed its last annual goodwill evaluation during the fourth quarter of 2015. No impairment was indicated by this evaluation. The next annual goodwill evaluation will be performed during the fourth quarter of 2016.

23. The Q1 2016 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by the Individual Defendants, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24. The statements referenced in ¶¶ 18-23 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) a number of Quorum's hospitals were underperforming at the time of the spin-off from CHS; (ii) various other indicators of impairment existed at the time of Quorum's spin-off from CHS; (iii) Quorum disregarded and/or failed to advise investors of the foregoing issues; and (iv) as a result of the foregoing, Quorum's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

25. On August 10, 2016, after the market closed, Quorum filed its Quarterly Report on Form 10-Q with the SEC announcing the Company's financial and operating results for the three months ended June 30, 2016. Quorum reported a substantial net loss and an operating loss for the quarter, which it blamed on $250.4 million in impairment charges taken in the quarter. The charges

7

included $45.4 million to reduce certain long-lived asset values in property, equipment and software; $5 million in goodwill based on management's decision to divest certain hospitals; and $200 million related to the carryover allocation of goodwill at the time of the spin-off from CHS.

26. As a result of this news, Quorum's share price fell $4.99, or 49.8%, to close at $5.03 on August 11, 2016.

27. On August 11, 2016, after the market closed, the Company hosted a conference call to discuss its quarterly results. During the call, Defendant Miller stated, in part:

> This quarter was not at all what we had in mind for our first quarter as a public company . . . . As you know, we were not set up as a separate entity and thus had no real hands-on with the majority of these facilities and QHR prior to that time. With the facilities from all six divisions of CHS, it's only natural to expect *there was a lack of focus on many of these matters leading up to the spin*.

(Emphasis added.)

28. In his prepared statements, Defendant Culotta admitted during the call that Quorum had overstated its goodwill at the time of the spinoff:

> The former Parent used a stock price of $41.50 at September 30, 2013 and multiplied times the number of shares and then multiplied by 1.25% to give a control premium. They then added the debt less cash. They then took the trailing 12-months adjusted EBITDA of the hospitals to be spun out and gave it a 7.5 multiple; and then compared that value to the other value and it represented about 10%. The 10% was used to allocate goodwill, 10% to QHC and 90% to CHS. *So when you take a look at our market value through our equity both at spin and subsequent to the spin and recent trends, it was apparent that there were indicators of impairment.* All testing calculations we did average to the $200 million amount.

29. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

8

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Quorum Securities: (1) pursuant and/or traceable to Quorum's false and misleading Registration Statement issued in connection with the Company's spinoff from CHS effective on or about April 29, 2016; and/or (2) on the open market; and were damaged upon the revelation of the alleged corrective disclosures (the "Class"). Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31. The members of the Class are so numerous that joinder of all members is impracticable. Quorum securities have been actively traded on the NYSE since May 2, 2016. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Quorum or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

33. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

34. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public misrepresented material facts about the business, operations and management of Quorum;

- whether the Individual Defendants caused Quorum to issue false and misleading financial statements;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Quorum securities were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

36. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts;

- the omissions and misrepresentations were material;

- Quorum securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume at relevant times;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Quorum securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

37. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

38. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their public statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

39. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40. Defendants carried out a plan, scheme and course of conduct which was intended to and did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Quorum's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

41. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated

11

as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Quorum securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

42. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business and future prospects of Quorum as specified herein.

43. These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Quorum's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Quorum and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Quorum securities.

44. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company at all relevant times and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's business prospects and

operations; (3) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's operations and business projects at all relevant times; and (4) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

45. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the Company's flawed manufacturing processes, thereby artificially inflating price of its securities. As demonstrated by Defendants' omissions and misstatements of the Company's business strategy, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

46. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Quorum securities was artificially inflated. In ignorance of the fact that market prices of Quorum's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants, Plaintiff and the other members

13

of the Class acquired Quorum securities at artificially high prices and were or will be damaged thereby.

47. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the Company's flawed manufacturing processes, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Quorum securities, or, if they had acquired such securities, they would not have done so at the artificially inflated prices that they paid.

48. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

49. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities.

50. This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

51. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of Quorum within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the

14

Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

53. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

54. As set forth above, Quorum and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

55. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities.

56. This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## COUNT III

### (Violations of Section 11 of the Securities Act Against All Defendants)

57. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

58. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against the Individual Defendants.

59. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

60. Quorum is the registrant for the IPO. Individual Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

61. As issuer of the shares, Quorum is strictly liable to Plaintiff and the Class for the misstatements and omissions.

62. None of the Individual Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

63. By reasons of the conduct herein alleged, each Individual Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

64. Plaintiff acquired Quorum securities pursuant and/or traceable to the Registration Statement for the IPO.

65. Plaintiff and the Class have sustained damages. The value of Quorum securities has declined substantially subsequent to and due to the Individual Defendants' violations.

## COUNT IV

### (Violations of Section 15 of the
### Securities Act Against The Individual Defendants)

66.  Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

67.  This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

68.  Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Quorum within the meaning of Section 15 of the Securities Act. Individual Defendants had the power and influence and exercised the same to cause Quorum to engage in the acts described herein.

69.  Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

70.  By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.  Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.  Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.  Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.   Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 9, 2016

Respectfully submitted,

**s/*Paul Kent Bramlett***
Paul Kent Bramlett #7387 TN/MS #4291
Robert Preston Bramlett #25895 TN
**BRAMLETT LAW OFFICES**
P. O. Box 150734
Nashville, TN 37215-0734
Telephone:   615.248.2828
Facsimile:    866.816.4116
PKNASHLAW@aol.com
Robert@BramlettLawOffices.com


**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
           ahood@pomlaw.com
           mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer
Marshall P. Dees
1200 Ashwood Parkway
Suite 410

Atlanta, Georgia 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
Email: cholzer@holzerlaw.com
mdees@holzerlaw.com

***Attorneys for Plaintiff***