UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| APARNA RAO, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>v.<br><br>QUORUM HEALTH CORPORATION, THOMAS D. MILLER, and MICHAEL J. CULOTTA,<br><br>                              Defendants. | Case No. 3:16-cv-02475<br><br>**AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Aparna Rao ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her amended complaint against Defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Quorum Health Corporation ("Quorum" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Quorum securities between May 2, 2016 and August 10, 2016, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Quorum is an independent operator and manager of general acute-care hospitals and outpatient services in the United States, with facilities in 16 states. Quorum was spun off from Community Health Systems, Inc. ("CHS"), effective April 29, 2016. Under the terms of the spin-off, CHS stockholders who held CHS common stock as of April 22, 2016, the record date, received a distribution of one share of Quorum common stock for every four shares of CHS common stock, plus cash in lieu of any fractional shares. CHS's stockholders owned all of the outstanding common stock of Quorum upon completion of the spinoff. On May 2, 2016, Quorum's common stock began trading on the New York Stock Exchange ("NYSE") under the ticker symbol "QHC."

3. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) a number of Quorum's hospitals were underperforming at the time of the spin-off from CHS; (ii) various other indicators of impairment existed at the time of Quorum's spin-off from CHS; (iii) Quorum disregarded and/or failed to advise investors of the foregoing issues; and (iv) as a result of the foregoing, Quorum's public statements were materially false and misleading at all relevant times.

2

4. On August 10, 2016, Quorum issued a press release and filed a Quarterly Report on Form 10-Q with the SEC announcing the Company's financial and operating results for the three months ended June 30, 2016 (the "Q2 2016 10-Q"). In the press release and Q2 2016 10-Q, Quorum reported a substantial net loss and an operating loss for the quarter. Defendants blamed the large operating loss on the $250.4 million in impairment charges Quorum had taken in the quarter, including $45.4 million to reduce certain long-lived asset values in property, equipment and software; $5 million in goodwill based on management's decision to divest certain hospitals; and $200 million related to the carryover allocation of goodwill at the time of the spin-off from CHS.

5. On this news, Quorum's share price fell $4.99, or 49.8%, to close at $5.03 on August 11, 2016.

6. On August 11, 2016, after the market closed, Quorum hosted a conference call to discuss the Company's quarterly results. During the call, Defendant Michael J. Culotta ("Culotta"), the Company's Chief Financial Officer ("CFO), stated, in part, that "*there were indicators of impairment*" at the time of Quorum's spin-off from CHS, and Defendant Thomas D. Miller ("Miller"), the Company's Chief Executive Officer ("CEO"), stated, in part, "[w]ith the facilities from all six divisions of CHS, it's only natural to expect *there was a lack of focus on many of these matters leading up to the spin*." (Emphases added.)

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant Quorum is headquartered within this District.

11. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12. Plaintiff, as set forth in the attached Certification, acquired Quorum securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13. Defendant Quorum is incorporated in Delaware, and the Company's principal executive offices are located at 1573 Mallory Lane, Brentwood, Tennessee 37027. Quorum's common stock trades on the NYSE under the ticker symbol "QHC."

14. Defendant Miller has served at all relevant times as a member of the Quorum Board of Directors and as the Company's CEO.

15. Defendant Culotta has served at all relevant times as Quorum's CFO and Executive Vice President.

16. The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17. Quorum is an independent operator and manager of general acute-care hospitals and outpatient services in the United States, with facilities in 16 states. Quorum was spun off from CHS, effective April 29, 2016. Under the terms of the spin-off, CHS stockholders who held CHS common stock as of April 22, 2016, the record date, received a distribution of one share of Quorum common stock for every four shares of CHS common stock, plus cash in lieu of any fractional shares. CHS's stockholders owned all of the outstanding common stock of Quorum upon completion of the spinoff. On May 2, 2016, Quorum's common stock began trading on the NYSE under the ticker symbol "QHC."

18. On April 1, 2016, Quorum filed a Form 10 with the SEC in connection with this spinoff stating the Company's assets included $876 million in property plant and equipment and $541.7 million in goodwill. Quorum attributed $508.4 million of that value to its hospital operations reporting unit.

### Materially False and Misleading Statements Issued During the Class Period

19. On May 2, 2016, the Class Period begins when Quorum filed a Current Report on Form 8-K with the SEC, appended to which as an exhibit was a press release entitled "Community Health Systems Completes Spin-off of Quorum Health Corporation." The press release stated, in part:

> Commenting on the launch of QHC, Thomas D. Miller, president and chief executive officer of Quorum Health Corporation, said, "QHC launches with a clear vision to focus on improving the health care in every community where services are provided. At a time when rural hospitals are under siege, we will use

our resources to help make these hospitals essential in their communities. We look forward with determination and enthusiasm to the opportunity ahead."

As a result of the spin-off, QHC owns or leases a portfolio of 38 hospitals with an aggregate of 3,582 licensed beds. The hospitals are geographically diversified across 16 states, primarily located in cities or counties having populations of 50,000 or less. QHC also operates Quorum Health Resources, LLC, a leading hospital management advisory and consulting services business.

20.     On May 11, 2016, Quorum issued a press release and filed a Current Report on Form 8-K with the SEC announcing certain of the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 8-K"). For the quarter, Quorum reported a net loss of $5.00 million on revenue of $549.55 million, compared to net income of $6.20 million on revenue of $547.62 million for the same period in the prior year. Quorum also reaffirmed the Company's prior fiscal year 2016 financial guidance.

21.     In the Q1 2016 8-K, Defendant Miller stated, in part:

We are pleased that our financial results for the first quarter were consistent with our expectations for the full year, and today we are affirming our established financial guidance for 2016. We are very confident and optimistic about the long-term future of this new company.

22.     On May 11, 2016, Quorum also filed a Quarterly Report on Form 10-Q with the SEC, reporting in full the Company's financial and operating results for the quarter ended March 31, 2016. Quorum repeated its claim that its total assets exceeded $2.3 billion, including $541.8 million in goodwill. In its Q1 2016 10-Q, Quorum stated, in part:

Goodwill is evaluated for impairment at the same time every year and when an event occurs or circumstances change that, more likely than not, reduce the fair value of the reporting unit below its carrying value. There is a two-step method for determining goodwill impairment. Step one is to compare the fair value of the reporting unit with the unit's carrying amount, including goodwill. If this test indicates the fair value is less than the carrying value, then step two is required to compare the implied fair value of the reporting unit's goodwill with the carrying value of the reporting unit's goodwill. The Company performed its last annual goodwill evaluation during the fourth quarter of 2015. No impairment was

6

indicated by this evaluation. The next annual goodwill evaluation will be performed during the fourth quarter of 2016.

23. The Q1 2016 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by the Individual Defendants, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24. The statements referenced in ¶¶ 19-24 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) a number of Quorum's hospitals were underperforming at the time of the spin-off from CHS; (ii) various other indicators of impairment existed at the time of Quorum's spin-off from CHS; (iii) Quorum disregarded and/or failed to advise investors of the foregoing issues; and (iv) as a result of the foregoing, Quorum's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

25. On August 10, 2016, after the market closed, Quorum filed its Quarterly Report on Form 10-Q with the SEC announcing the Company's financial and operating results for the three months ended June 30, 2016. Quorum reported a substantial net loss and an operating loss for the quarter, which it blamed on $250.4 million in impairment charges taken in the quarter. The charges included $45.4 million to reduce certain long-lived asset values in property, equipment and software; $5 million in goodwill based on management's decision to divest certain hospitals; and $200 million related to the carryover allocation of goodwill at the time of the spin-off from CHS.

7

26. As a result of this news, Quorum's share price fell $4.99, or 49.8%, to close at $5.03 on August 11, 2016.

27. On August 11, 2016, after the market closed, the Company hosted a conference call to discuss its quarterly results. During the call, Defendant Miller stated, in part:

> This quarter was not at all what we had in mind for our first quarter as a public company . . . . As you know, we were not set up as a separate entity and thus had no real hands-on with the majority of these facilities and QHR prior to that time. With the facilities from all six divisions of CHS, it's only natural to expect *there was a lack of focus on many of these matters leading up to the spin*.

(Emphasis added.)

28. In his prepared statements, Defendant Culotta admitted during the call that Quorum had overstated its goodwill at the time of the spinoff:

> The former Parent used a stock price of $41.50 at September 30, 2013 and multiplied times the number of shares and then multiplied by 1.25% to give a control premium. They then added the debt less cash. They then took the trailing 12-months adjusted EBITDA of the hospitals to be spun out and gave it a 7.5 multiple; and then compared that value to the other value and it represented about 10%. The 10% was used to allocate goodwill, 10% to QHC and 90% to CHS. *So when you take a look at our market value through our equity both at spin and subsequent to the spin and recent trends, it was apparent that there were indicators of impairment.* All testing calculations we did average to the $200 million amount.

29. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Quorum securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are

Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Quorum securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Quorum or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

33. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

34. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Quorum;

- whether the Individual Defendants caused Quorum to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Quorum securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

36. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Quorum securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Quorum securities between the time the Defendants failed to disclose or misrepresented

10

material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

37. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

38. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

39. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

41. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and
11

other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Quorum securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Quorum securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

42. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Quorum securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Quorum's finances and business prospects.

43. By virtue of their positions at Quorum, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

12

44. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Quorum securities from their personal portfolios.

45. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Quorum, the Individual Defendants had knowledge of the details of Quorum's internal affairs.

46. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Quorum. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Quorum's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Quorum securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Quorum's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Quorum securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

47. During the Class Period, Quorum securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be

disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Quorum securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Quorum securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Quorum securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

48. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. During the Class Period, the Individual Defendants participated in the operation and management of Quorum, and conducted and participated, directly and indirectly, in the

14

conduct of Quorum's business affairs. Because of their senior positions, they knew the adverse non-public information about Quorum's misstatement of income and expenses and false financial statements.

52. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Quorum's financial condition and results of operations, and to correct promptly any public statements issued by Quorum which had become materially false or misleading.

53. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Quorum disseminated in the marketplace during the Class Period concerning Quorum's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Quorum to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Quorum within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Quorum securities.

54. Each of the Individual Defendants, therefore, acted as a controlling person of Quorum. By reason of their senior management positions and/or being directors of Quorum, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Quorum to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Quorum and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

55. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Quorum.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 13, 2016

Respectfully submitted,

s/*Paul Kent Bramlett*
Paul Kent Bramlett TN #7387/MS #4291
Robert Preston Bramlett TN #25895
**BRAMLETT LAW OFFICES**
40 Burton Hills Blvd., Suite 200
P. O. Box 150734
Nashville, TN 37215
Telephone: 615.248.2828
Facsimile: 866.816.4116
E-Mails:
    PKNASHLAW@aol.com
    Robert@BramlettLawOffices.**com**

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer
Marshall P. Dees
1200 Ashwood Parkway
Suite 410
Atlanta, Georgia 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
Email: cholzer@holzerlaw.com
mdees@holzerlaw.com

*Attorneys for Plaintiff*